```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


MERIDIAN INVESTMENTS, INC.       )
                                 )
     Plaintiff,                  )
                                 )
     v.                          )     1:15cv1463(JCC/IDD)
                                 )
FEDERAL HOME LOAN MORTGAGE       )
CORPORATION, et al.,             )
                                 )
     Defendants.                 )
```

**M E M O R A N D U M   O P I N I O N**

This case comes before the Court on the Defendants' Motion to Dismiss [Dkt. 20]. For the reasons stated below, the Court will grant Defendants' Motion to Dismiss and Dismiss the Case with prejudice.

**I. Background**

On September 6, 2008, following the financial crisis, Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") was placed into a federal statutory conservatorship by Defendant Federal Housing Finance Agency ("FHFA"). (Compl. [Dkt. 1] ¶ 7.) Shortly after FHFA began its conservatorship, FHFA, on behalf of Freddie Mac, entered into a Senior Preferred Stock Agreement with the Department of the Treasury ("Treasury"). (*Id.* at ¶ 56; Def.'s Mem. in Supp. [Dkt. 21], at 1.) That agreement resulted in a huge capital influx from Treasury in return for, among

1

other things, an agreement that Freddie Mac:

> Shall not, and shall not permit any of its subsidiaries to, in each case without the prior written consent of [Treasury], sell, transfer, lease, or otherwise dispose of (in one transaction or a series of related transactions) all or any portion of its assets (including Equity interests in other persons, including subsidiaries), whether now owned or hereafter acquired (any such sale, transfer, lease or disposition, a "Disposition"), other than Dispositions for fair market value: . . . (b) of assets and properties in the ordinary course of business, consistent with past practices, [or] . . . (d) of cash or cash equivalents for cash or cash equivalents . . . ."

(Compl., Ex. 5 [Dkt. 1-5], at 9.) Shortly after entering the conservatorship and entering into the agreement with the treasury, Freddie Mac and Plaintiff Meridian Investments, Inc. entered into a Memorandum of Understanding ("MOU") providing that Freddie Mac and Meridian would take commercially reasonable steps in a good faith effort to negotiate a definitive agreement for the sale of Low Income Housing Tax Credits ("LIHTCs"). (Compl. ¶ 44, Ex. 2 [Dkt. 1-2], ¶7.) The MOU explicitly acknowledges that any definitive agreements would have to be subject to FHFA's approval. (Compl., Ex. 2, ¶3(a).) Ultimately, the deal for the sale of the LIHTCs fell through because FHFA, as conservator of Freddie Mac, declined to approve the deal. In refusing to finalize the deal, Freddie Mac pointed to the refusal of the Department of the Treasury to give its consent to a similar sale by Fannie Mae, pursuant to rights

2

Treasury acquired under the Senior Preferred Stock Arrangement. (Compl. ¶ 55.) Defendant admits that the deal fell through due to Treasury's refusal to consent to the sale of LIHTCs as FHFA believed was required under the terms of the Senior Preferred Stock Arrangement. (Defs.' Mem. in Supp. at 2.) Ultimately, Meridian filed this action for breach of contract as a result of the deal (often referred to by the parties as the "Project America" deal) falling through.

Defendants filed this motion to dismiss arguing: (1) that this action for breach of contract is barred by Virginia's five-year statute of limitations for breach of contract causes of action; (2) that the MOU was a non-binding "agreement to agree", in violation of the well settled principle in Virginia that agreements to agree are too vague and indefinite to be enforced; and (3) the complaint fails to state a claim because it provides no plausible allegations suggesting that Defendants breached the MOU. (*Id.*) For the reasons explained below, the Court finds that the Plaintiff's complaint is barred by the Virginia statute of limitations and that the MOU was a non-binding "agreement to agree". Additionally, as explained below, the Court finds that paragraph 12 of the MOU requiring the parties to execute and deliver "formal written definitive agreements" before the proposed transaction became binding created a condition precedent which had to be satisfied prior to

3

the creation of any obligations or rights relating to the proposed Project America transaction.

## II. Legal Standard

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). "While the court must accept well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions disguised as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009). Therefore, a pleading that offers only a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Equally unacceptable is a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted). In the instance where sufficient facts are alleged in the complaint to rule on an affirmative defense, such as the statute of limitations, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies,

4

however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (emphasis in original).

### III. Analysis

The Court begins by examining Defendant's assertion that this action is time-barred by the Virginia statute of limitations for breach of contract actions. The Court will then turn to the issue of the MOU's enforceability as an "agreement to agree". Finally, the Court will examine whether the MOU's requirement of executed and delivered formal, written, and definitive agreements constituted a condition precedent to the creation of a contract for the Project America transaction.

A.   <u>Statute of Limitations</u>

Plaintiff invokes this Court's jurisdiction both on the basis of the parties' diversity pursuant to 28 U.S.C. § 1332(a)(1) and on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the "sue and be sued clause" of Freddie Mac's organic statute, 12 U.S.C. § 1452. (Compl. at ¶¶ 4-5.) Whatever the basis of this court's jurisdiction, the applicable statute of limitations in this case hinges on the question of whether this is a suit between private parties, or a suit between a private party and the United States of America or one of its agencies. Plaintiff argues that Freddie Mac and FHFA

5

have acted as instruments and agents of Treasury, thus making Freddie Mac and FHFA the United States for purposes of 28 U.S.C. § 2401(a) and bringing this action within the six year statute of limitations prescribed by that statute. As described below, however, the Court finds that Defendants are private parties rather than agents or instrumentalities of the United States of America for purposes of this case. Accordingly, the six-year statute of limitations for civil actions brought against the United States provided by 28 U.S.C. § 2401(a) does not apply in this case. As this case is a breach of contract action between private parties, the five year statute of limitations for breach of contract actions established by Virginia Code § 8.01-246 applies regardless of whether this Court's jurisdiction is based on diversity of citizenship or the "sue and be sued clause" of 12 U.S.C. § 1452. *See Smith v. Flagstar Bank, F.S.B.*, No. 3:14-Cv-741, 2015 WL 1221270, at *3 (E.D.Va. Mar. 17, 2015)("[i]n a federal diversity action, state law governs the existence and interpretation of any statute of limitations"); *Kirkpatrick v. Lenoir Cty. Bd. Of Educ.*, 216 F.3d 380, 386 (4th Cir. 2000)(holding that in the absence of a specific federal statute of limitations federal courts "adhere to the 'borrowing' doctrine, which requires a federal court to borrow from the state [with] the most analogous state statute of limitation").

Several courts have already determined, and this Court agrees, that when a federal instrumentality acts as a conservator, in the interests of the party in conservatorship, that instrumentality does not act as the government. *See, e.g., O'Melveny & Myers v. Fed. Deposit Ins. Corp.,* 114 S.Ct. 2048, 2053 (1994)("the FDIC is not the United States"); *Ameristar Financial Servicing, Co., LLC v. U.S.*, 75 Fed.Cl. 807 (2007)(holding FDIC is not the United States when it acts as conservator of newly established bank); *Herron v. Fannie Mae,* 857 F.Supp.2d 87, 2012 WL 1476051 (D.D.C. Apr. 30, 2012)("FHFA stepped into the shoes of Fannie Mae. FHFA as conservator for Fannie Mae is not a government actor"). Likewise, courts are in agreement that Freddie Mac has not become a government actor simply by virtue of FHFA's conservatorship. *See, e.g., Mik v. Fed. Home Loan Mortg. Corp.,* 743 F.3d 149, 168 (6th Cir. 2014)("Freddie Mac is not a government actor [for constitutional purposes]."); *Fed. Home Loan Mortg. Corp. v. Shamoon,* 922 F. Supp. 2d 641 645 (E.D. Mich. 2013), *appeal dismissed* (Sept. 5, 20132)(FHFA conservatorship "does not and cannot transform that private corporation [Freddie Mac] into a government actor" for purposes of constitutional claims); *Syriani v. Freddie Mac Multiclass Certificates, Series 3365,* No. CV 12-003035 2012 WL 6200251, at *4 (C.D.Cal. July 10, 2012)(holding that Freddie Mac is not a governmental actor even after FHFA has taken it into

conservatorship). Therefore, when FHFA acts in its role as conservator for Freddie Mac, neither party acts as the United States.

Plaintiff argues that the specific facts of this case establish that Freddie Mac and FHFA must have been acting as agents of the Treasury, otherwise their actions are inexplicable. (Pl.'s Mem. in Opp. at 21-23.) Plaintiff's argument is that the deal offered to Freddie Mac under the MOU was so good that no one could reasonably have objected to it unless they were motivated by something other than Freddie Mac's best interests. Plaintiff argues that by refusing to consent to the deal, Treasury was actually ordering Freddie Mac and FHFA to act in the taxpayer interest and in furtherance of government objectives, thus converting FHFA and Freddie Mac into government actors. (*Id.*)

Plaintiff relies heavily on *Auction Co. of Am. v. FDIC,* 132 F.3d 746 (D.C. Cir. 1997) *clarified on denial of reh'g,* 141 F.3d 1198 (D.C. Cir. 1998) in their argument that FHFA is acting here as an agent of the government. *Auction* dealt with an action against the FDIC as receiver for certain failed thrifts, and held that 28 U.S.C. § 2401(a) applies when a "federal instrumentality acts within its statutory authority to carry out [the government's] purposes." 132 F.3d at 749 (alteration in original)(citation omitted).

8

The case at bar, however, can be easily distinguished from the situation at issue in *Auction*. In arguing that FHFA is acting as an agent of the Treasury, rather than in its role as conservator of Freddie Mac, Plaintiff misunderstands the relationship between Freddie Mac, FHFA, and the Treasury. Shortly after FHFA stepped into Freddie Mac's shoes as conservator, Treasury entered into a senior preferred stock agreement with Freddie Mac whereby Treasury provided massive funding commitments in return for, among other things, an agreement that Freddie Mac would not "sell, transfer, lease, or otherwise dispose of" any assets, including LIHTCs, without Treasury's written consent. It was this right to veto major Freddie Mac transactions, acquired through the purchase of preferred stock in return for vast amounts of capital, that Treasury exercised when it refused to consent to the Project America deal. In other words, FHFA did not seek Treasury's approval of the deal as an instrumentality of the United States Government or as an agent of the Treasury Department; FHFA sought Treasury's approval in its role as conservator of Freddie Mac, a private entity, because it believed Freddie Mac was contractually obligated to obtain Treasury's consent to the proposed deal.[1] Treasury's motives in refusing to consent to the

---

[1] Plaintiff alleges that Treasury's consent was not required for the Project America transaction, because Project America fell

9

Project America deal are irrelevant to Plaintiff's cause of action.  Under the facts alleged, FHFA acted strictly within its role as conservator for Freddie Mac in seeking Treasury's contractually required approval.  Accordingly, under the facts alleged in the complaint, neither FHFA nor Freddie Mac acted as agents of the Treasury in a way that would render them government actors in this case.  As neither FHFA nor Freddie Mac are government actors, this case presents a breach of contract claim between two private parties, and the Virginia five-year statute of limitations governs.

The Plaintiff's alternative theory, suggesting that the parties contractually chose the six-year of statute of limitations found in 28 USCS § 2401(a) holds no water.  Section 9 of the MOU provides:

> This MOU shall be construed, and the right and obligations of the Parties determined, in accordance with the laws of the United States of America. Insofar as there may be no applicable precedent, the laws of the Commonwealth of Virginia shall be deemed reflective of the laws of the United States of America.

---

outside of the Senior Preferred Stock Purchase Agreement. (Compl. ¶57.)  However, Plaintiff then alleges that Freddie Mac had the capacity to carry out the Project America transaction and should have done so "even if, by doing so, it might have been in breach of the Senior Preferred Stock Purchase Agreement." (Id.)  The Court notes that it would not be unreasonable, or inconsistent with FHFA's role as conservator, for FHFA to believe that Treasury's consent was required under the Senior Preferred Stock Purchasing Agreement for a sale of this magnitude (multiple billions of dollars).

10

(Compl., Ex. 2, at 6.) In light of this Court's finding that this case is a breach of contract action between private parties, Plaintiff can no longer claim that section 2401(a) provides an "applicable federal precedent" on the statute of limitations. Section 2401 applies only to "civil actions commenced against the United States." 28 U.S.C. § 2401(a). As Plaintiff does not, and cannot point to another specific federal statute providing a statute of limitations for breach of contract claims between private parties, this court will "adhere to the 'borrowing' doctrine, which requires a federal court to borrow from the state [with] the most analogous state statute of limitation." *Kirkpatrick,* 216 F.3d at 386. The most analogous state statute of limitations here is provided by Virginia Code § 8.01-246, which provides that actions founded upon a contract shall be brought within five years of the date after the cause of action shall have accrued.

### B. Enforceability of the MOU

The Court also finds that the MOU is an unenforceable "agreement to agree". "This Court has long recognized the well-settled principle in Virginia that agreements to agree in the future are 'too vague and too indefinite to be enforced'. . . ." *Zoroastrian Ctr. v. Rustam Guiv Found.*, No. 1-13-cv-980, 2014 WL 1901290, at *6 (E.D.Va. May 12, 2014)(citation omitted). A promise to negotiate in good faith and arrive at a later final

deal is an unenforceable "agreement to agree" under Virginia Law. *Space Tech. Dev. Corp. v. Boeing Co.,* 209 F.App'x. 236, 240 (4th Cir. 2006). Likewise, "a letter of intent or any other writing in which the terms of a future transaction or later, more formal agreement[,] are set out is presumed to be an agreement to agree rather than a binding contract." *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC,* No. 3:11-cv-630, 2012 WL 2905110, at *4 (E.D.Va. July 16, 2012). "Moreover, even if the parties are fully agreed upon the terms of the contract, [a finding] that the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement which is binding." *Cyberlock Consulting, Inc. v. Info. Experts, Inc.,* 939 F.Supp.2d 572, 580 (E.D.Va. 2013), *aff'd,* 549 Fed.App'x 211 (4th Cir. 2014)(internal quotation marks and citation omitted).

The MOU expressly provided for the future execution of "formal written definitive agreements." (Compl. Ex. 2, ¶ 12.) Plaintiff argues that paragraphs 7, 3(a), and 1(j) of the MOU created specific binding obligations which the Defendants allegedly breached. Paragraph 7 of the MOU provides that the parties "agree to cooperate and take such reasonable actions in order to aid and assist each other in taking such actions as may be necessary or appropriate to structure and complete the transaction to carry out the intent of the MOU." (Id. at ¶ 7.)

In paragraph 3(a) of the MOU, the parties agree to take all commercially reasonable efforts to execute definitive documents and use their commercially reasonable efforts to reasonably address those issues not specifically addressed in the MOU, and promptly consult with, and to the extent required, exercise commercially reasonable efforts to obtain consent from, FHFA to proceed with the transactions contemplated by the MOU. (Id. at ¶3.) Finally, in paragraph 1(j), the parties "agree to use commercially reasonable efforts to complete the transactions contemplated by this MOU as soon as possible hereafter." (Id. at ¶1(j).) Each of these supposed "obligations" is really nothing more than promises to negotiate in good faith and reach a future agreement. A promise to negotiate in good faith and arrive at a later final deal is an unenforceable "agreement to agree" under Virginia Law. *Space Tech.*, 209 F.App'x. at 240. Accordingly, the Court will find that the MOU created only an unenforceable "agreement to agree", and will dismiss Plaintiff's claims on those grounds as well.

### C. Condition Precedent

In Virginia, "[a] condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." *Smith v. McGregor*, 237 Va. 66, 376 S.E.2d 60, 65 (1985). A condition precedent exists where "the

13

contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs." *Morotock Ins. Co. v. Fostoria Novelty Co.*, 94 Va. 361, 26 S.E. 850, 852 (1987). As a general rule, "the mere fact that a later formal writing is contemplated will not vitiate an agreement." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 457 S.E.2d 36, 41 (1995). However, when the parties manifest in an agreement that the agreement is "subject to the execution of a formal agreement, the execution of a formal agreement constitutes a condition precedent to the existence of a valid and binding [] agreement." *Bryant v. McDougal*, 49 Va.App. 78, 636 S.E.2d 897,900 (2006)(quoting *Golding v. Floyd*, 261 Va. 190, 539 S.E.2d 735, 738 (2001))(internal alterations in original omitted). If the contemplated formal agreement is never executed and the condition precedent therefore "does not occur, the defendant cannot be held liable for failure to perform the contract." *Space Tech. Dev. Corp. v. Boeing Co.*, 209 Fed.App'x 236, 239 (4th Cir. 2006).

Paragraph 12 of the MOU between Meridian and Freddie Mac expressly provides:

> Notwithstanding the terms of this MOU, or any other past, present, or future written or oral indications of assent or indications of results of negotiation or agreement to some or all matter then under negotiation, it is agreed that no Party hereto (and no person or entity related to any such Party) will be under any legal obligation with respect to the

14

>     proposed transaction or any similar transaction,
>     unless and until formal written definitive agreements
>     have been executed and delivered by all Parties
>     intending to be bound; <u>provided, however</u>, that the
>     obligations set forth in paragraph 1(j) and paragraphs
>     4, 6, 7, 8, 9, 10, 11, and 12 (the "<u>Binding
>     Provisions</u>") hereof will be binding on the Parties
>     upon execution and delivery of this MOU in accordance
>     with the terms hereof.

(Compl. Ex. 2, ¶ 12 (emphasis in original).) The MOU could hardly be clearer in its stipulation that the Project America deal will not become binding on either party until "formal written definitive agreements have been executed and delivered by all parties." (*Id.*) The MOU explicitly requires the execution and delivery of a formal written agreement regardless of any other "indications of assent or indications of results of negotiation or agreement to some or all matter then under negotiation." (*Id.*) Clearly, the parties intended the Project America deal to be "subject to execution of a formal agreement," and "the execution of a formal agreement [is therefore] a condition precedent." *Golding*, 539 S.E.2d at 738.

Plaintiff admits that the MOU contemplates future definitive agreements, but Plaintiff contends that the parties "eventually completed their negotiations and reached agreement on those definitive agreements." (Pl.'s Mem. in Opp. at 25.) The parties are in agreement, however, that no formal written definitive agreements were ever executed. Because the parties clearly manifested in the MOU their intent that the Project

15

America deal was subject to the execution of finalized, formal documents and no such documents were executed in this case, no contract was ever formed and Defendants cannot be held liable for breach of contract.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss.  An appropriate Order shall issue.

|  | /s/ |
|---|---|
| March 1, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |